Our final case for today is United States v. Nitzan. Good morning, Your Honors. Barry Spivak from Monaco, and Spivak, we represent the appellant Stuart Nitzkin. The principal issue before the court is whether the trial court erred when added two levels to the sentencing guidelines under 2B1.1B9A, I'll call it the misrepresentation guideline. Our answer to it, we believe, is simple, that the defendant was acting on behalf of a charitable organization, and therefore, he did not fall under that enhancement. Just the enhancement said, asked the question of whether he was acting under this particular whether the offense involved a misrepresentation that the defendant was acting on behalf of a charitable organization. The fact is, he was acting on behalf of a charitable organization. Mr. Spivak, I have a question about the state of appellate authority in recent years. Since Amendment 617, which said it was resolving a conflict among the circuits about how to resolve a conflict, has that been a state of appellate authority in recent years? I can't think of the date. I mean, obviously, there was the Frazier case. That's well before you're talking about. I'm well aware of that, and the Sentencing Commission was well aware of that. And I believe there was an Eighth Circuit case, but I'm not sure of the date of that. So, if I'm aware of them, those would be the two, and I'm not completely certain, but I think there was an Eighth Circuit case. I'm not sure how you're answering my question. I'm asking if any of the post-2001 cases support your argument, or if they all go the government's way on this. I think they do go the government's way. Right. So, you're asking us to create a conflict among the circuits, which sometimes we will do, but it's always in a more uphill haul. Yes, well, and I think the reason that the cases since 2001 were going the government way is that the guidelines, the commentary, the guidelines was changed, and most of the courts, just like the court below, followed. Well, that turns out to be the major problem for the government. Amendment 617 changes Note 8b and leaves the text of the guidelines absolutely unchanged. Right, but I believe that what happens is all those courts ignore that, and they go right to the guideline, and the guideline, which was changed in a way that would, say, apply to this particular case, that's what the courts relied upon. Well, actually, one court of appeals said that the amendment to Note 8b was made by Congress, which just floored me. I'm glad, because I was very nervous about that, whether I had misunderstood the law, but yes. No, it was made by the staff of the Sentencing Committee. That does seem quite straightforward. Right, which is basically the entree into what our argument is, is that the commission can't change the law, and the law that existed before... Well, the commission can change the guidelines. It can change... I'm sorry. The question is whether you can change the guideline, not by amending the guideline, but by amending a note. Which I think you cannot do. You cannot change the guideline by amending the note, and that is what I believe happened here. I think that the guideline had to do with authority in order to solicit funds, and instead the guideline came up with a completely different way of applying the enhancement, and that was something for the notice and comment provisions, something for Congress to decide. And the fact that it was even changed in order to meet these kind of cases shows you that it was inconsistent with the original guideline. If you look at the original guideline, and you look, for instance, at the application notes to the original guideline, the application notes, there were three examples that were used in the application notes. That was where the defendant solicited donations for a nonexistent relief organization, where the defendant diverted donations to a religiously affiliated school by falsely claiming to be a school fundraiser, and where the defendant posed as a federal collection agent to collect a student debt. All of those possibilities, all of those examples, had to do with making a false statement with respect to whether the defendant could, in fact, have authority in order to obtain the funds. If what happened then is the, afterwards, the Sentencing Commission comes up with a completely new guideline, pardon me, completely new commentary that goes beyond that, and now says that, oh, no, it also includes something where somebody, where a defendant, like the did have the authority to act on behalf of the charitable organization, but then later did something that, in order to divert money, and at that point, therefore, the provision applied. I think it's interesting. In order to find for you, we'd have to find that the plain language of the guideline itself does not permit an enhancement where the defendant has the authority, but misrepresents the intended use. Yes. And you're relying heavily on Frazier for that, but in Frazier itself, the Tenth Circuit found that the plain language allowed for that interpretation, but didn't apply that interpretation because of the notes, the application note. And now the Sentencing Commission cleared up the application note to be consistent with what the Tenth Circuit said the text provides for it. So how do you get around that? We'd have to disagree with the Tenth Circuit's interpretation of the text. But I think that at the time of the Tenth Circuit case, we had the application notes, the original ones, the ones I just talked about, which all had to do with the capacity, with the authority. Well, as we talked about a moment ago, the application notes by themselves can't amend the guideline. Right. We still have the same guideline and still have the same text of the guideline, and the Tenth Circuit interpreted that the way the government is. Application, sorry, Amendment 617 begins by saying there's a conflict among the circuits between Frazier, the Tenth Circuit case, and Markham, the Fourth Circuit case. So if we get past the amended application note, you still lose unless we agree with the Fourth Circuit rather than the Tenth. Yes. Yes. Yes. We've got to go back and interpret the text of the guideline. Yes. But my view is that the guideline itself is clearly, it just has to do with whether the – Yes. That's what the Fourth Circuit said. But you might want to deal with the Tenth Circuit's contrary reasoning. That's what Judge St. Eve is inviting you to do. I believe that the Tenth Circuit, I believe, you know, these cases were decided in 1995 and 1997 back then. We're saying that you go back to the original guideline. The original guideline has not changed, you know, since 2000. That's exactly my point. It hasn't changed since the Tenth Circuit interpreted it. And the Tenth Circuit interpreted the guideline itself consistent with the government's position but didn't apply it that way given the application notes. And I say the application notes should have – the application notes are consistent with the reading of the original guideline that there has to be misrepresentation. We're starting from – you know, to that extent, Your Honors, I mean, we're starting from scratch with it. No one has really talked about, you know, from the beginning as to whether the application notes controlled a case like this in the first place, whether they controlled diversion. This is a diversion case. That is a completely separate thing than what the original guideline said, what the guideline says today, and completely different from the way the Sentencing Commission interpreted the guidelines through the examples that they presented. So we think we have to start from scratch with it, Your Honor, that the guideline does not include this sort of a – didn't include a diversion type thing. And what happened is the Commission went ahead, legislated a completely new guideline, and they didn't have the authority to do that. And for that reason, we believe the judge was incorrect in adding that two-point enhancement. Thank you, Your Honor. Thank you, Mr. Spivak. Thank you, Judge. Ms. Palmer. Ms. Palmer, I notice that your brief adopts and quotes the statement of the Ninth Circuit that Congress rewrote Application Note 8B. Do you stand by that? Your Honor, in the Ninth Circuit case that you're referring to, United States v. Lambert, there was the reference that – I know the Ninth Circuit said that, but it's absurd. Your Honor – Why should you repeat things that are transparently nonsense? Thank you, Your Honor. Yes, the purpose of the Sentencing Commission is not to legislate guideline text, but rather to interpret the guidelines. So that statement – No, that's not the point I was making. Congress does not write the notes. It doesn't write the guidelines. Congress has the authority to block changes in the guidelines, but only changes in the guidelines, not changes in the notes. The notes are outside the authority to do one of these stop pieces of legislation. And in no event would any person familiar with this process assert, as your brief does, that Congress rewrote Application Note 8B. We can debate what the consequence of that is, but I was stunned to see the United States, to see the executive branch of government, assert that Congress has written Application Note 8B. Your Honor, the government was relying on that case, the Lambert case, in how it interpreted what the Application Note is doing. So, Ms. Palmer, do you agree that Application Note 8B that you're relying on, that that came from the Sentencing Commission and not from Congress? Yes, Your Honor. Application Note 8B did come from the Sentencing Commission. That's what was inaccurately stated in your—I know you were quoting the Ninth Circuit, but it said that Congress wrote that. And as you stand here today, you're not trying to say Congress wrote that. That's correct, Your Honor, we are not. No, the Sentencing Commission wrote the application notes to interpret what the text of the guideline was saying. And here, the text of— And the next question is, do you agree with the proposition that you cannot amend the guidelines by amending an application note? Your Honor, yes, I do agree with that proposition. Essentially, you can't change the meaning of something, of a regulation, by rewriting the legislative history. And, in fact, the Supreme Court has held that about as squarely as you can imagine, where Congress reenacted a statute, left the text alone, but provided a new legislative history. And the Supreme Court said, nope, no effect, does not change the meaning. And so, we are back to the world as it was before 2001. And so, what is that world? What is the meaning of the guideline in that world? Yes, Your Honor, if you look at the plain text of the guideline, the guideline just says that this misrepresentation enhancement applies when the offense involves a misrepresentation that defendant is acting on behalf of the charity. So, when we look at that text, a person is not acting on behalf of a charity when that defendant says that they are— That's the problem, though. They are acting on behalf of the charity in raising the money, and on behalf of themselves, right? No doubt, Nitzen expected—we will assume, the district court certainly could assume— that Nitzen expected to steal some of the money, but not all of the money, right? So, he's acting on behalf of the charity and acting on behalf of his own pocket. What happens when somebody is both? Your Honor, the— Is he not acting on behalf of the charity at all if he's also acting in his own interest? Your Honor, the guideline text does not require that we have a defendant who at all times only acts on behalf of the charity or only does not act on behalf of the charity. No, no, let's actually look at the language. You add two levels if the offense involved, quote, a misrepresentation that the defendant was acting on behalf of a charitable da-da-da-da-da-da-da agency. Nitzen represented that he was the executive director of a charity. Is that a misrepresentation? His role as being the executive director of a charity and fundraising, that is not where the misrepresentation— And he represented that the charity would get the money. He was later going to embezzle some of it, but it wasn't a misrepresentation that they would get the money. Your Honor, as a fundraiser, I think it's implicit in that role that you are representing that what you are raising for the charity will be used for the charity. Well, then this two levels would be added in every case because Nitzen had to raise enough to cover his own salary, perfectly legitimate. He was interested in raising money, some of which was going to go to him as part of his salary. Do you think that adds two levels? No, Your Honor. I think this is where the application note, which interprets the text of the guideline, can be helpful. Because the application note says that this misrepresentation comes in when a defendant diverts some or all of the funds. Yeah, we know what the application note says, but we've already agreed that it can't amend the guideline. Correct, Your Honor. I don't think that that's amending. I think that that is just interpreting how this misrepresentation can play out for somebody like Mr. Nitzen, who was a fundraiser for this charity. Look, I try when reading text to be relatively simple-minded, to read the text the way a normal person would read it. And this says, misrepresentation that the defendant was acting on behalf of a charitable organization. And you agree that Nitzen's statement that he was acting on behalf of a charitable organization was accurate. And if it's accurate, how is it a misrepresentation, even if he expects to get some of the money, whether by embezzlement or salary? Your Honor, I think when the defendant has the intent to divert funds that he's representing are going to the charity, he is no longer acting on behalf of the charity. He's acting on behalf of himself. That seems metaphysical. Your Honor, I think there's many court cases, including in this circuit and elsewhere, that have looked at this guideline and said that our current fact pattern, where we have a defendant that has actual authority to represent a charity. Yes, well, he had actual authority to represent the charity. Correct. He was, in fact, its executive director. Correct. He was also an embezzler. Correct. And I think this guideline... The question is whether this guideline deals with embezzlement by somebody who actually represents the charity. And you can't show that just by repeating that he's an embezzler. That begs the question. I hope you see my problem. Your Honor, I think here where the defendant stops acting on behalf of the charity when he makes misrepresentations... No, he was still the executive director, and most of the money still went to the charity's coffers. Your position would be very strong if somebody wrote out a check for $10,000, and he endorsed it and put it in his own bank account. But if what happens is that somebody writes a check for $10,000, and Nitzen later embezzles $1,000 of the $10,000, and the charity still has $9,000, it's very hard to deny that he was acting as a representative of the charity. As I say, I hope you see my problem, but you don't appear to be seeing what's bugging me. Your Honor, I think we really need to look at the intent here, and this is what the district court did. When the district court looked at this... The district court added this addition, but we have to work out on our own what the meaning of this language is. The district court neither adds to nor subtracts from the meaning of the guideline. Your Honor, I think when we look at this plain text of the guideline, we can agree that this guideline is broad, and this is why the application notes are useful, but the guideline itself just says there needs to be a misrepresentation that a defendant acts on behalf of the charity, and when courts have looked at that language, courts have said that acting on behalf of the charity stops when the defendant starts to act on behalf of himself, and that's what we have here. As the district court found by a preponderance of the evidence, and indeed that was based on an uncontroverted record, defendant played a fundraising role for the victim's charity, and in the course of that work, he diverted funds intended for the charity to himself. Now, as the district court put it, this played out in there would be a $300 donation. $100 of that donation was going to the defendant, not to the charity. The district court also properly found by a preponderance of the evidence that defendant intended to divert part of the benefit obtained to himself consistent with that application note language, and those findings were well supported by the record. If we look at the record, we see in the PSR that defendant took on this role of raising funds for the charity. He represented to donors. He represented to his colleagues at the charity that those funds would be going to the charity, and then in this course of the five-year continuing fraud, he knew that he was going to be diverting those funds to his own personal benefit. These factual findings all fall squarely within the plain text of the guideline enhancement, which just says there needs to be a misrepresentation that you're acting on behalf of the charity, and these factual findings also comport with the enhancement's purposes. Thank you, Your Honors. The government asks that the court affirm the defendant's sentence in this case. Thank you, Ms. Palmer. Anything further, Mr. Spivak? Okay. Well, thank you very much. The case is taken under advisement, and the court will be in recess.